IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT E. SMITH, | ) | |
| Plaintiff | ) | C.A. No. 17-153 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| SAFETY-KLEEN SYSTEMS, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

**A.      Relevant Procedural History**

Plaintiff Robert E. Smith, an adult resident of Meadville, Pennsylvania, initiated this action by filing a complaint in the Court of Common Pleas of Crawford County, Pennsylvania on March 3, 2017. Plaintiff subsequently filed an amended complaint in the same court on or about May 31, 2017, which is now the operative pleading in this case. Named as Defendant in the amended complaint is Safety-Kleen Systems, Inc., a corporation existing under the laws of the state of Wisconsin, with a principal place of business in Richardson, Texas. Plaintiff alleges that he was constructively discharged by Defendant on or about January 28, 2017, after Defendant allegedly refused to allow him to comply with the hours of service regulations issued by the Federal Motor Carrier Safety Administration ("FMCSA"). As relief for his claim, Plaintiff seeks to recover lost wages in excess of $ 99,000.00 a year.

On June 15, 2017, this action was transferred to this Court based on diversity of citizenship, and Defendant filed an answer to the amended complaint on July 26, 2017. Now pending before the Court is Defendant's motion for summary judgment [ECF No. 19], in which Defendant asserts that Plaintiff's claim is without sufficient legal basis and should be dismissed

1

as a matter of law. Plaintiff has filed a memorandum of law in opposition to Defendant's motion [ECF No. 22], to which Defendant has filed a reply brief [ECF No. 24]. This matter is now ripe for consideration.

## B. Stipulated Material Facts[1]

Defendant is a collector, recycler, and re-refiner of used oil, with locations throughout North America. (ECF No. 21, at ¶ 1). Defendant owns trucks, tankers, rail-cars, and barges that enable it to collect used oil from locations across the United States, Canada, and Puerto Rico. (Id. at ¶ 2). Before becoming an employee of Defendant, Plaintiff was employed by OFR Trucking, Inc. ("OFR"), for whom he drove a tractor-trailer that, under FMCSA regulations, was a commercial vehicle weighing over 10,000 pounds. (Id. at ¶¶ 4-5). While employed by OFR, Plaintiff commuted in a rental car each week from his home in Meadville, Pennsylvania, to a terminal in Cranston, Rhode Island ("Cranston Terminal"). (Id. at ¶ 6).

At his home each Friday Plaintiff received paperwork reflecting the routes and pick-ups he was assigned for the upcoming week, which usually began on Monday of each week after he arrived at the Cranston Terminal and took possession of his assigned tractor-trailer. (Id. at ¶ 7). Plaintiff generally completed his assigned routes and pick-ups Monday through Thursday using the tractor-trailer assigned to him at the Cranston Terminal. (Id. at ¶ 8). The time Plaintiff spent operating the tractor-trailer qualified as "driving time," as that term is defined by the FMCSA's regulations. (Id. at ¶ 9). During the time relevant to this case, after Plaintiff completed his assigned routes he returned his assigned tractor-trailer to the Cranston Terminal and drove home in a rental car. (Id. at ¶ 10)

---

[1] To promote judicial economy, the parties have filed a Concise Statement of Stipulated Material Facts [ECF No. 21] in advance of discovery, which relate purely to issues of law to enable the Court to decide the pending motion.

In or around October 2015, Defendant acquired certain assets of OFR while Plaintiff was still employed by OFR. (Id. at ¶¶ 11-12). After the acquisition, Plaintiff applied for a position with Defendant and was subsequently employed by Defendant as an over-the-road driver beginning in December 2015, which employment was at-will. (Id. at ¶ 13). Plaintiff continued the home-to-work commuting arrangement he had agreed to while employed by OFR. (Id. at ¶ 14). The rental car that Plaintiff drove between Pennsylvania and the Cranston Terminal was not a commercial vehicle, as defined by FMCSA regulations, and was provided by an entity unrelated to Defendant, who did not own the vehicle. (Id. at ¶¶ 15-16). Defendant reimbursed Plaintiff for his travel-related expenses, including the cost of the rental car, and Plaintiff was compensated at his normal hourly rate for the hours he spent commuting between the Cranston Terminal and his home. (Id. at ¶ 17). Plaintiff logged the time he spent commuting in the rental car as "off-duty" time in the driver logs he was required to maintain pursuant to FMCSA regulations. (Id. at ¶ 18).

## II. DISCUSSION

### A. Public Policy Exception to At-Will Employment Doctrine

Under Pennsylvania law, "the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicated a clear mandate of public policy in this Commonwealth." McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 288 (Pa.2000). To successfully state a claim for wrongful termination, an at-will employee "must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." Id. at 289. "This can be accomplished by pointing to a

3

violation of a 'clear policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.'" Medley v. SugarHouse HSP Gaming, LP., 2013 WL 1157349, at *3 (E.D.Pa. Mar. 21, 2013), citing Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa.Super.1996).

In application, the public policy exception "has been limited to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute." Tanay v. Encore Healthcare, LLC, 810 F.Supp.2d 734, 738 (E.D.Pa.2011). Importantly, Pennsylvania will not recognize a wrongful discharge claim when an at-will employee's discharge is based on a disagreement with management about the legality of a proposed course of action unless the action the employer wants to take actually violates the law. Clark v. Modern Group Ltd., 9 F.3d 321, 328 (3rd Cir. 1993).

Here, Plaintiff argues that Defendant's instruction to log the time he spent commuting between his home in Pennsylvania and Defendant's Cranston terminal as "off-duty" time was in contravention of FMCSA's regulations, and that his refusal to abide by this instruction, and his consequent resignation, amounted to a constructive discharge under Pennsylvania law. The Court is, thus, tasked with determining whether Defendant's instruction prevented Plaintiff from complying with a statutorily imposed duty under FMCSA's regulations so as to implicate the public policy exception to the at-will employment doctrine.

### B. Applicable FMCSA Regulations

The primary FMCSA regulations at issue are promulgated at 49 C.F.R. § 395, which govern hours of service of CMV drivers. In particular, 49 C.F.R. § 395.8 requires CMV drivers to record their driver's duty status for each 24-hour period using the following designations:

(1) "Off duty" or "OFF"; (2) "Sleeper berth" or "SB"; (3) "Driving" or "D"; and (4) "On-duty not driving" or "ON". 49 C.F.R. § 395(b)(1)-(4). The driver is required to log how many hours he spent in each duty status over a 24-hour period, with all 24 hours being accounted for. 49 C.F.R. § 395.8(f)(11). Each duty status is defined by the regulations, as follows:

- "Off duty" time is any time when a driver is not on duty, does not have to be in readiness to work, or is not under any responsibility for performing work.

- "Sleeper berth" includes time off duty resting in a sleeper berth.

- "Driving" time means "all times spent at the driving controls of a [CMV] in operation."

- "On-duty" time means "all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work."

See 49 C.F.R. §§ 395.2; 395.8(h)(1)-(4).

The regulations further define "on-duty" time as including the following specified activities:

> (1) All time at a plant, terminal, facility, or other property of a motor carrier or shipper, or on any public property, waiting to be dispatched, unless the driver has been relieved from duty by the motor carrier;
> (2) All time inspecting, servicing, or conditioning any commercial motor vehicle at any time;
> (3) All driving time as defined in the term driving time;
> (4) All time in or on a commercial motor vehicle, other than:
> > (i) Time spent resting in or on a parked vehicle, except as otherwise provided in § 397.5 of this subchapter;
> > (ii) Time spent resting in a sleeper berth; or
> > (iii) Up to 2 hours riding in the passenger seat of a property-carrying vehicle moving on the highway immediately before or after a period of at least 8 consecutive hours in the sleeper berth;
> (5) All time loading or unloading a commercial motor vehicle, supervising, or assisting in the loading or unloading, attending a commercial motor vehicle being

loaded or unloaded, remaining in readiness to operate the commercial motor vehicle, or in giving or receiving receipts for shipments loaded or unloaded;
(6) All time repairing, obtaining assistance, or remaining in attendance upon a disabled commercial motor vehicle;
(7) All time spent providing a breath sample or urine specimen, including travel time to and from the collection site, to comply with the random, reasonable suspicion, post-crash, or follow-up testing required by part 382 of this subchapter when directed by a motor carrier;
(8) Performing any other work in the capacity, employ, or service of, a motor carrier; and
(9) Performing any compensated work for a person who is not a motor carrier.

49 C.F.R. § 395.2.

### C. Application

Plaintiff asserts, *inter alia*, that his commute from his home in Pennsylvania to the Cranston terminal fits within the definition of "on-duty" time under 49 C.F.R. § 395.2, subsections (1), (8), and/or (9). (ECF No. 22, Plaintiff's Opposition Brief, at p. 7). Specifically, Plaintiff argues that he was "in the service of the Defendant" when he was driving to the Cranston terminal, as he "had already received his orders at home and was on public property travelling to the terminal." (Id. at p. 8). Accordingly, Plaintiff insists that he was statutorily required to record his commute as "on-duty" time. In furtherance of this argument, Plaintiff notes that, in response to a question on the FMCSA's website inquiring how a CMV driver driving a non-CMV at the direction of a motor carrier should record his time, the FMCSA responded that the Federal Highway administration requires such drivers "to record such time operating as on-duty (not driving)." (Id., citing, www.fmcsa.dot.gov/regulations/title 49/ section/ 395.2.).

In response, Defendant disputes that Plaintiff was "in the service of the Defendant" during his commute from his home to the Cranston terminal since his job responsibilities didn't

6

commence until he arrived at the terminal and took possession of his assigned CMV. (ECF No. 24, Defendant's Reply Brief, at p. 4). Instead, Defendant depicts Plaintiff's travel between his home and the Cranston terminal as nothing more than a normal home-to-work commute, which didn't become "work" or "service" time simply because of the extraordinary length of the commute. (Id.). Although this argument has merit as a general principle, it loses much of its appeal when one considers the fact that Plaintiff was compensated for the rental car and for his commute time at his normal rate of pay. Such accommodations go beyond the normal home-to-work commute.

Nonetheless, rather than delving further into the somewhat murky issue of whether Plaintiff was on-duty or off-duty during his commute, the Court finds dispositive another element of Plaintiff's claim that has received little attention. The crux of Plaintiff's claim is that, due to Defendant's contrary instructions, his failure to log his commute as "on-duty" time "would have violated federal statutory mandates, subjecting him [to] fines and/or loss of his CDL license. These fines and/or penalties would then be reported to Pennsylvania authorities, resulting in Pennsylvania imposing fines and/or penalties on Plaintiff." (ECF No. 22, at p. 11). Thus, at base, Plaintiff voluntarily resigned his employment with Defendant because he was ultimately concerned about his own well-being. While such concern is understandable, it is not the type of concern for which the public policy exception exists. The Third Circuit Court has recognized as much, holding,

> The public policy exception to the doctrine of employment at-will does not exist, however, to protect the employee. Rather it is the protection of society from public harm, or the need to vindicate fundamental individual rights, that undergird an at-will employee's common law action for wrongful discharge in Pennsylvania. See Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1180 ((Pa.Super. 1989) (public has interest in being protected from radiation dangers and plaintiff had statutory duty to act); Reuther v. Fowler & Williams, Inc. , 386 A.2d 119, 121 (Pa.Super. 1978)

7

(public "necessity of having citizens freely available for jury service" is recognized public policy) …. **[W]e hold that an at-will employee's reasonable fear of adverse personal consequence if he follows his employer's directions is insufficient to make out an action for wrongful discharge in Pennsylvania.** Again, we see no indication that the supreme court of that state is willing to stretch Pennsylvania's narrow public policy exception to the doctrine of employment at-will that far. Imposition of liability on the employer based on the employee's fear of personal responsibility for actions he reasonably, but erroneously, fears are in violation of law would permit an employee to use the public policy exception for his own benefit instead of the public benefit. Clark, 9 F.3d at 331-333.

Because Plaintiff has failed to show that the termination of his at-will employment with Defendant implicated a "clear mandate of public policy" in Pennsylvania, the Court finds that he has failed to state a cognizable claim of wrongful or constructive discharge as a matter of law. Summary judgment will be entered in favor of Defendant, accordingly.

An appropriate Order will follow.